FILED - USDC ALSD
OCT 15 '25 PM3:45

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| ALLEN HARTOONIAN, on behalf of Himself and others similarly situated, | ) ) ) | CIVIL ACTION FILE NO 1:25-00327 - *TFM* |
| Plaintiff, | ) ) | COMPLAINT-CLASSACTION |
| v. | ) ) | JURY DEMAND DEMANDED |
| RESEARCH STRATEGIES, INC., | ) ) | |
| Defendant. | ) | |

## ANSWER AND
## MOTION FOR SUMMARY JUDGMENT
## OF
## RESEARCH STRATEGIES, INC. ,
## A DISSOLVED CORPORATION

NOW COMES, Research Strategies. Inc., a dissolved corporation, by and through its former President, Eugene A. Talbott, and responds to the Complaint as follows:

On Wednesday, October 8, 2025, at 9:55AM, former corporation, Research Strategies, Inc., received a Civil Action Summons, (Civil Action No. 25-00327-TFM-N) addressing Research Strategies, Inc. and served at 5858 Old Pascagoula Road, Mobile, Alabama, 36619. This class action complaint is by Allen Hartoonian (Plaintiff) v. Research Strategies, Inc. (Defendant).

Research Strategies, Inc. was in the process of dissolution in August 2025 and Research Strategies, Inc.'s recorded Articles of Dissolution (Alabama Entry ID Number 000-177-491) with the Alabama Secretary of State, recorded on September 8, 2025, at 14:18 pm. dissolving said corporation. Dissolution is attached hereto as Exhibit "A". Research Strategies, Inc. has disseminated all assets to stockholders, which were minimal, and has given notice and paid all outstanding creditors in accordance with the dissolution process. There are no assets remaining for Research Strategies, Inc.

# Nature of Action

Research Strategies, Inc. was a Consumer, Business-to-Business, Public Opinion Marketing Research Company. The company had conducted over 2,700 qualitative and quantitative research assignments over the past 39 years throughout the United States. While asking for individual opinions as to various subjects being researched. Research Strategies, Inc. never **"solicited"** anyone by telephone intercept, online intercepts or on-

1

site intercepts to purchase or consider any product or service. **In the case of Mr. Hartoonian, his telephone record (818) XXX-5201 (as indicated in the complaint) <u>was not</u> in Research Strategies, Inc.'s telephone records and was never used by CallFire to call for the particular Focus Group research project on the call days indicated in the complaint on 3/29/23, 4/3/2023 and 4/4/2023.** Callfire is an outbound call service used by Research Strategies, Inc. The telephone records were purchased by Research Strategies, Inc. from Database USA, compiled from the leading credit reporting companies (i.e., Experian, Equifax, etc.). The only way a telephone number could be included in these records is if the person had provided their approval **(consent)** to the credit reporting company to release, sell and/or use that information internally or by other companies. Through this chain of business transactions, Research Strategies, Inc. had the consent to use telephone numbers related to the research.

Research Strategies, Inc.'s research protocol was compliant with the Federal Trade Commission's regulations and its exemptions.

## Answers to Complaint
### #1

The research calls made on 3/29/23, 4/3/2023 and 4/4/2023 were made through CallFire, an outbound call service. Telephone records (telephone numbers) were purchased by Research Strategies, Inc. through Database USA, compiled from the leading credit reporting companies (i.e., Experian, Equifax, etc.) data. These telephone numbers could only be released once the person had provided their approval **(consent)** to the credit reporting company. The telephone number provide4d in the complaint is not a number that exist in the records of Research Strategies, Inc. or CallFire. If CallFire connected to a live person, the line was immediately transferred to an actual, live (non-recorded) Research Strategies, Inc.'s Telephone Researchers. If an answering machine was encountered, a message about the Focus Group research was left by a real person's voice, not by a recorded message. Therefore, this research protocol was not an unmanned (automated) robocall.

### #2

As stated above, the actual dials were made by CallFire and answered by a live Research Strategies, Inc.'s Telephone Researcher. There were no pre-recorded calls. Present estimations indicate that **over 76%[1] of United States adult households** use cell phones as their primary telephone service. As published by Merrian Webster Dictionary in 2025 - Robocalling (noun) - **Definition:** An automated telephone call that delivers a recorded message.

### #3

The Focus Group recruited by Research Strategies, Inc. on 3/29/23, 4/3/2023 and 4/4/2023 recruited only ninety (90) individuals from selected residential ZIP Codes. Because a $150.00 honorarium was offered for the recruited participation in the research, the research's incident rate was low.

---

[1] 2025 Consumer Affairs U.S.

## #4

Mr. Hartoonian's telephone number ((818) XXX-5201) as indicated in the complaint, was **never** in Research Strategies, Inc.'s database used for the research conducted on 3/29/23, 4/3/2023 and 4/4/2023. Research Strategies, Inc. maintains that a succession of the **chain of consent** exist between Research Strategies, Inc., CallFire, Database USA and the leading credit reporting companies (the source of the telephone records) and any plaintiff.

## Answers to the Parties
### #5

The plaintiff, Allen Hartoonian, as cited in the complaint (Civil Action No. 25-00327 -TFM-N) and referenced by telephone number (818) XXX-5201 in the complaint, **did not exist** in Research Strategies, Inc.' database by the area code and last four digits of the telephone numbers in the database provided to CallFire for the research project dates of 3/29/23, 4/3/2023 and 4/4/2023.

### #6

On September 8, 2025, Research Strategies, Inc. filed and recorded with the Alabama Secretary of State, Articles of Dissolution that can be found under Alabama Entry ID Number 000-177-491. Research Strategies, Inc., a previous Alabama Sub-S Corporation, was a fully dissolved corporation before the "Proof of Service" for Civil Action No. 25-00327-TFM-N was served at 9:57AM on Wednesday, October 8, 2025, at 5858 Old Pascagoula Road, Mobile, Alabama 36619.

## Answers to Jurisdiction and Venue Answers
## #7 Through #9

The dissolved Research Strategies, Inc.'s primary location was at 5858 Old Pascagoula Road, Mobile, Alabama 36619 in Mobile County Alabama. At the time, Research Strategies was an operating Alabama Sub-S Corporation; it fell within the legal jurisdiction of the United States District Court for the Southern District of Alabama. Research Strategies, Inc. was a full-service Consumer, Public Opinion, Business-to -Business Market Research company.

## Factual Allegations
### #15

Research Strategies, Inc. requests the dismissal of the allegation Civil Action No. 25-00327-TFM-N because the telephone number ((818) XXX-5201) as indicated in the complaint, **was never** in Research Strategies, Inc.'s database used for the research conducted on  3/29/23, 4/3/2023 and 4/4/2023.

3

## #16

Research Strategies, Inc. requests the dismissal of Civil Action No. 25-00327-TFM-N because the telephone number ((818) XXX-5201) as indicated in the complaint, **was never** in Research Strategies, Inc.'s database used for the research conducted on 3/29/23, 4/3/2023 and 4/4/2023.

## #17

Research Strategies, Inc. requests the dismissal of Civil Action No. 25-00327-TFM-N allegation because Research Strategies, Inc.'s **never used** CallFire to place any call to plausible research participants without a live Telephone Researcher available to answer any human answered calls.

## #18

Research Strategies, Inc. requests the dismissal of Civil Action No. 25-00327-TFM-N because the message shown as a complaint was only delivered to an answering machine.  Research Strategies,  Inc. does not know how Mr. Hartoonian got the message because his telephone record  (818) XXX-5201 (as indicated in the complaint) **was not** in Research Strategies, Inc.'s  telephone records provided to CallFire to call for the Focus Group research on 3/29/23, 4/3/2023 and 4/4/2023.

## #19

Research Strategies, Inc. requests the dismissal of Civil Action No. 25-00327-TFM-N because the message shown in the complaint was only delivered to an answer machine. Research Strategies, Inc. does not know how Mr. Hartoonian got the message because his telephone record (818) XXX-5201 (as indicated in the complaint) **was not** in Research Strategies, Inc.'s telephone records provided to CallFire to call for the Focus Group research on 3/29/23, 4/3/2023 and 4/4/2023.

## #20

Research Strategies, Inc. requests the dismissal of Civil Action No. 25-00327-TFM-N because the recorded message shown in the complaint was only delivered to an answer machine. Research Strategies, Inc. does not know how Mr. Hartoonian got the message because his telephone record (818) XXX-5201 (as indicated in the complaint) **was not** in Research Strategies, Inc.'s telephone records provided to CallFire to call for the Focus Group research on 3/29/23, 4/3/2023 and 4/4/2023.

## #21

Research Strategies, Inc. requests the dismissal of Civil Action No. 25-00327-TFM-N allegation because the telephone number ((818) XXX-5201) as indicated in the complaint, was **never** in Research Strategies, Inc.'s database used for the research conducted on 3/29/23, 4/3/2023 and 4/4/2023. However, Research Strategies, Inc. did purchase the other telephone numbers through Database USA, compiled from the leading credit reporting companies (i.e., Experian, Equifax, etc.) data. These telephone numbers could only be released by the leading credit reporting companies, once the

4

person had provided their approval (**consent**).

## #22

Research Strategies, Inc. requests the dismissal of Civil Action No. 25-00327-TFM-N allegation because the telephone number ((818) XXX-5201) as indicated in the complaint, was <u>**never**</u> in Research Strategies, Inc.'s database used for the research conducted on 3/29/23, 4/3/2023 and 4/4/2023. However, Research Strategies, Inc. did purchase the other telephone numbers through Database USA, compiled from the leading credit reporting companies (i.e., Experian, Equifax, etc.) data. These telephone numbers could only be released by the leading credit reporting companies, once the person had provided their approval (**consent**).

## #23

Research Strategies, Inc. requests the dismissal of Civil Action No. 25-00327-TFM-N allegation because the telephone number ((818) XXX-5201) as indicated in the complaint, was <u>**never**</u> in Research Strategies, Inc.'s database used for the research conducted on 3/29/23, 4/3/2023 and 4/4/2023. However, Research Strategies, Inc. did purchase other telephone numbers through Database USA, compiled from the leading credit reporting companies (i.e., Experian, Equifax, etc.) data. These telephone numbers could only be released by the leading credit reporting companies, once the person had provided their approval (**consent**).

## #24

Research Strategies, Inc. requests the dismissal of Civil Action No. 25-00327-TFM-N because the telephone number ((818) XXX-5201) as indicated in the complaint, was <u>**never**</u> in Research Strategies, Inc.'s database used for the research conducted on 3/29/23, 4/3/2023 and 4/4/2023. However, Research Strategies, Inc. did purchase other telephone numbers through Database USA, compiled from the leading credit reporting companies (i.e., Experian, Equifax, etc.) data. These telephone numbers could only be released by the leading credit reporting companies, once the person had provided them approval (**consent**).

## #25

Research Strategies, Inc. requests the dismissal of Civil Action No. 25-00327-TFM-N because the telephone number ((818) XXX-5201) as indicated in the complaint, was <u>**never**</u> in Research Strategies, Inc.'s database used for the research conducted on 3/29/23, 4/3/2023 and 4/4/2023. However, Research Strategies, Inc. did purchase other telephone numbers through Database USA, compiled from the leading credit reporting companies (i.e., Experian, Equifax, etc.) data. These telephone numbers could only be released by the leading credit reporting companies, once the person had provided them approval (**consent**).

## #26

Research Strategies, Inc. requests the dismissal of Civil Action No. 25-00327-TFM-N because if the defendant had been called and answered the telephone call, not recorded it on his answering machine (prerecorded device), a live Telephone Researcher would have been on the line.

## #27

Research Strategies, Inc. requests the dismissal of Civil Action No. 25-00327-TFM-N because the questionable plaintiff suffered no harm with the message could only be received by an answering machine, easily erased if the potential research participant had no interest in the project.

## #28

Research Strategies, Inc. requests the dismissal of Civil Action No. 25-00327-TFM-N because the questionable plaintiff suffered no harm with the message could only be received by an answering machine, easily erased if the potential research participant had no interest in the project.

## #29

Research Strategies, Inc. requests the dismissal of Civil Action No. 25-00327-TFM-N allegation because the telephone number ((818) XXX-5201) as indicated in the complaint, **was never** in Research Strategies, Inc.'s database used for the research conducted on 3/29/23, 4/3/2023 and 4/4/2023.

# Class Action Allegations
# #30 Through #58

Research Strategies, Inc. requests the dismissal of Civil Action No. 25-00327-TFM-N as stated above and noted below:

# "United States
# Federal Communication Commission
# Act  47 U.S.C. § 227  [47 U.S.C. 227] RESTRICTIONS ON THE USE OF TELEPHONE EQUIPMENT

*As used in this section— (1) The term "automatic telephone dialing system" means equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and  (B) to dial such numbers.*

*(2) The term "established business relationship", for purposes only of subsection (b)(1)(C)(i), shall have the meaning given the term in section 64.1200 of title 47, Code of Federal Regulations, as in effect on January 1, 2003, except that— (A) such*

6

*term shall include a relationship between a person or entity and a business subscriber subject to the same terms applicable under such section to a relationship between a person or entity and a residential subscriber; and B) an established business relationship shall be subject to any time limitation established pursuant to paragraph (2)(G)).*

*(3) The term "telephone facsimile machine" means equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper.*

*(4) The term "telephone solicitation" means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization.*

(A & B) Research Strategies, Inc. requests the dismissal of the allegation Civil Action No. 25-00327-TFM-N because Research Strategies, Inc. did purchase the other telephone numbers through Database USA, compiled from the leading credit reporting companies (i.e., Experian, Equifax, etc.) data. These telephone numbers could only be released by the leading credit reporting companies, once the person had provided their approval **(consent)**.

*(5) The term "unsolicited advertisement" means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise.*

(5) Research Strategies, Inc. requests the dismissal of the allegation Civil Action No. 25-00327-TFM-N because Research Strategies, Inc. is a consumer research company, has never solicited a research participant to consider or buy any product or service.

*(b) RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT.— (1) PROHIBITIONS.—It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States— This summary of the Telephone Consumer Protection Act (47 U.S.C. § 227) is provided for convenience only. Individuals should also refer to the United States Code at http://www.gpoaccess.gov .*

*(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice— (i) to any emergency telephone line*

7

*(including any "911" line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or law enforcement agency); (ii) to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;*

(A) Research Strategies, Inc. requests the dismissal of the allegation Civil Action No. 25-00327-TFM-N as stated above the actual dials were made by CallFire and answered by a live Research Strategies, Inc.'s Telephone Researcher. All call were made to residents in designed residential ZIP Codes. Present estimations indicate that over 76%[2] of United States adult households use cell phones as their primary telephone service.

*(B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B);*

(B) Research Strategies, Inc. requests the dismissal of the allegation Civil Action No. 25-00327-TFM-N as stated above the actual dials were answered by a live Research Strategies, Inc.'s Telephone Researcher.

*(C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement to a telephone facsimile machine, unless— (i) the unsolicited advertisement is from a sender with an established business relationship with the recipient; (ii) the sender obtained the number of the telephone facsimile machine through— (I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or (II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution, except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before July 9, 2005, if the sender possessed the facsimile machine number of the recipient before such date of enactment; and*

A) Research Strategies, Inc. requests the dismissal of the allegation Civil Action No. 25-00327-TFM-N as stated above the actual dials were made by CallFire and answered by a live Research Strategies, Inc.'s Telephone Researcher. All call were made to residents in designed residential ZIP Codes.

---

[2] 2025 Consumer Affairs U.S.

8

*This summary of the Telephone Consumer Protection Act (47 U.S.C. § 227) is provided for convenience only. Individuals should also refer to the United States Code at http://www.gpoaccess.gov . (iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D), except that the exception under clauses (i) and (ii) shall not apply with respect to an unsolicited advertisement sent to a telephone facsimile machine by a sender to whom a request has been made not to send future unsolicited advertisements to such telephone facsimile machine that complies with the requirements under paragraph (2)(E); or (D) to use an automatic telephone dialing system in such a way that two or more telephone lines of a multi-line business are engaged simultaneously.*

A) Research Strategies, Inc. requests the dismissal of the allegation Civil Action No. 25-00327-TFM-N as stated above the actual dials were made by CallFire and answered by a live Research Strategies, Inc.'s Telephone Researcher. All call were made to residents in designed residential ZIP Codes.

*(2) REGULATIONS; EXEMPTIONS AND OTHER PROVISIONS.—The Commission shall prescribe regulations to implement the requirements of this subsection. In implementing the requirements of this subsection, the Commission— (A) shall consider prescribing regulations to allow businesses to avoid receiving calls made using an artificial or prerecorded voice to which they have not given their prior express consent; (B) may, by rule or order, exempt from the requirements of paragraph (1)(B) of this subsection, subject to such conditions as the Commission may prescribe— (i) calls that are not made for a commercial purpose; and (ii) such classes or categories of calls made for commercial purposes as the Commission determines— (I) will not adversely affect the privacy rights that this section is intended to protect; and (II) do not include the transmission of any unsolicited advertisement; (C) may, by rule or order, exempt from the requirements of paragraph (1)(A)(iii) of this subsection calls to a telephone number assigned to a cellular telephone service that are not charged to the called party, subject to such conditions as the Commission may prescribe as necessary in the interest of the privacy rights this section is intended to protect; (D) shall provide that a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if— (i) the notice is clear and conspicuous and on the first page of the unsolicited advertisement;*

*This summary of the Telephone Consumer Protection Act (47 U.S.C. § 227) is provided for convenience only. Individuals should also refer to the United States Code at http://www.gpoaccess.gov . (ii) the notice states that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time, as determined by the Commission, with such a request meeting the requirements under subparagraph (E) is unlawful; (iii) the notice sets forth the requirements for a request under subparagraph (E); (iv) the notice includes— (I) a domestic contact telephone and*

9

*facsimile machine number for the recipient to transmit such a request to the sender; and (II) a cost-free mechanism for a recipient to transmit a request pursuant to such notice to the sender of the unsolicited advertisement; the Commission shall by rule require the sender to provide such a mechanism and may, in the discretion of the Commission and subject to such conditions as the Commission may prescribe, exempt certain classes of small business senders, but only if the Commission determines that the costs to such class are unduly burdensome given the revenue generated by such small businesses; (v) the telephone and facsimile machine numbers and the cost-free mechanism set forth pursuant to clause (iv) permit an individual or business to make such a request at any time on any day of the week; and (vi) the notice complies with the requirements of subsection (d); (E) shall provide, by rule, that a request not to send future unsolicited advertisements to a telephone facsimile machine complies with the requirements under this subparagraph only if— (i) the request identifies the telephone number or numbers of the telephone facsimile machine or machines to which the request relates; (ii) the request is made to the telephone or facsimile number of the sender of such an unsolicited advertisement provided pursuant to subparagraph (D)(iv) or by any other method of communication as determined by the Commission; and (iii) the person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or*

*This summary of the Telephone Consumer Protection Act (47 U.S.C. § 227) is provided for convenience only.  Individuals should also refer to the United States Code at http://www.gpoaccess.gov . otherwise, to send such advertisements to such person at such telephone facsimile machine; (F) may, in the discretion of the Commission and subject to such conditions as the Commission may prescribe, allow professional or trade associations that are taxexempt nonprofit organizations to send unsolicited advertisements to their members in furtherance of the association's tax-exempt purpose that do not contain the notice required by paragraph (1)(C)(iii), except that the Commission may take action under this subparagraph only— (i) by regulation issued after public notice and opportunity for public comment; and (ii) if the Commission determines that such notice required by paragraph (1)(C)(iii) is not necessary to protect the ability of the members of such associations to stop such associations from sending any future unsolicited advertisements; and (G)(i) may, consistent with clause (ii), limit the duration of the existence of an established business relationship, however, before establishing any such limits, the Commission shall— (I) determine whether the existence of the exception under paragraph(1)(C) relating to an established business relationship has resulted in a significant number of complaints to the Commission regarding the sending of unsolicited advertisements to telephone facsimile machines; (II) determine whether a significant number of any such complaints involve unsolicited advertisements that were sent on the basis of an established business relationship that was longer in duration that the Commission believes is consistent with the reasonable expectations of consumers; (III) evaluate the costs to senders of demonstrating the existence of an established business relationship within a specified period of time and the benefits to recipients of establishing a limitation on such established business relationship; and (IV)*

10

*determine whether with respect to small businesses, the costs would not be unduly burdensome; and (ii) may not commence a proceeding to determine whether to limit the duration of the existence of an established business relationship before the expiration of the 3-month period that begins on July 9, 2005.*

*This summary of the Telephone Consumer Protection Act (47 U.S.C. § 227) is provided for convenience only. Individuals should also refer to the United States Code at http://www.gpoaccess.gov . (3) PRIVATE RIGHT OF ACTION.—A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State— (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or (C) both such actions. If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph. (c)*

*PROTECTION OF SUBSCRIBER PRIVACY RIGHTS.— (1) RULEMAKING PROCEEDING REQUIRED.— Within 120 days after December 20, 1991, the Commission shall initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. The proceeding shall— (A) compare and evaluate alternative methods and procedures (including the use of electronic databases, telephone network technologies, special directory markings, industry-based or company-specific "do not call" systems, and any other alternatives, individually or in combination) for their effectiveness in protecting such privacy rights, and in terms of their cost and other advantages and disadvantages; (B) evaluate the categories of public and private entities that would have the capacity to establish and administer such methods and procedures; (C) consider whether different methods and procedures may apply for local telephone solicitations, such as local telephone solicitations of small businesses or holders of second class mail permits; (D) consider whether there is a need for additional Commission authority to further restrict telephone solicitations, including those calls exempted under subsection (a)(3) of this section, and, if such a finding is made and supported by the record, propose specific restrictions to the Congress; and (E) develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section.*

*This summary of the Telephone Consumer Protection Act (47 U.S.C. § 227) is provided for convenience only. Individuals should also refer to the United States Code at http://www.gpoaccess.gov . (2) REGULATIONS.— Not later than 9 months after December 20, 1991, the Commission shall conclude the rulemaking proceeding initiated under paragraph (1) and shall prescribe regulations to implement methods and procedures for protecting the privacy rights described in such paragraph in an*

11

*efficient, effective, and economic manner and without the imposition of any additional charge to telephone subscribers. (3) USE OF DATABASE*

*PERMITTED.—The regulations required by paragraph (2) may require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations, and to make that compiled list and parts thereof available for purchase. If the Commission determines to require such a database, such regulations shall— (A) specify a method by which the Commission will select an entity to administer such database; (B) require each common carrier providing telephone exchange service, in accordance with regulations prescribed by the Commission, to inform subscribers for telephone exchange service of the opportunity to provide notification, in accordance with regulations established under this paragraph, that such subscriber objects to receiving telephone solicitations; (C) specify the methods by which each telephone subscriber shall be informed, by the common carrier that provides local exchange service to that subscriber, of (i) the subscriber's right to give or revoke a notification of an objection under subparagraph (A), and (ii) the methods by which such right may be exercised by the subscriber; (D) specify the methods by which such objections shall be collected and added to the database; (E) prohibit any residential subscriber from being charged for giving or revoking such notification or for being included in a database compiled under this section; (F) prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database; (G) specify (i) the methods by which any person desiring to make or transmit telephone solicitations will obtain access to the database, by area code or local exchange prefix, as required to avoid calling the telephone numbers of subscribers included in such database; and (ii) the costs to be recovered from such persons; (H) specify the methods for recovering, from persons accessing such database, the costs involved in identifying, collecting, updating, disseminating, and selling, and other activities relating to, the operations of the database that are incurred by the entities carrying out those activities;*

*This summary of the Telephone Consumer Protection Act (47 U.S.C. § 227) is provided for convenience only.  Individuals should also refer to the United States Code at http://www.gpoaccess.gov . (I) specify the frequency with which such database will be updated and specify the method by which such updating will take effect for purposes of compliance with the regulations prescribed under this subsection; (J) be designed to enable States to use the database mechanism selected by the Commission for purposes of administering or enforcing State law; (K) prohibit the use of such database for any purpose other than compliance with the requirements of this section and any such State law and specify methods for protection of the privacy rights of persons whose numbers are included in such database; and (L) require each common carrier providing services to any person for the purpose of making telephone solicitations to notify such person of the requirements of this section and the regulations thereunder. (4)*

12

*CONSIDERATIONS REQUIRED FOR USE OF DATABASE METHOD.—If the Commission determines to require the database mechanism described in paragraph (3), the Commission shall— (A) in developing procedures for gaining access to the database, consider the different needs of telemarketers conducting business on a national, regional, State, or local level; (B) develop a fee schedule or price structure for recouping the cost of such database that recognizes such differences and— (i) reflect the relative costs of providing a national, regional, State, or local list of phone numbers of subscribers who object to receiving telephone solicitations; (ii) reflect the relative costs of providing such lists on paper or electronic media; and (iii) not place an unreasonable financial burden on small businesses; and (C) consider (i) whether the needs of telemarketers operating on a local basis could be met through special markings of area white pages directories, and (ii) if such directories are needed as an adjunct to database lists prepared by area code and local exchange prefix. (5)*

*PRIVATE RIGHT OF ACTION.—A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—*

*This summary of the Telephone Consumer Protection Act (47 U.S.C. § 227) is provided for convenience only. Individuals should also refer to the United States Code at http://www.gpoaccess.gov . (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or (C) both such actions. It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.*

*(6) RELATION TO SUBSECTION (b).—The provisions of this subsection shall not be construed to permit a communication prohibited by subsection (b). (d) TECHNICAL AND PROCEDURAL STANDARDS.*

*(1) PROHIBITION.—It shall be unlawful for any person within the United States— (A) to initiate any communication using a telephone facsimile machine, or to make any telephone call using any automatic telephone dialing system, that does not comply with the technical and procedural standards prescribed under this subsection, or to use any telephone facsimile machine or automatic telephone dialing system in a manner that does not comply with such standards; or (B) to use a*

13

*computer or other electronic device to send any message via a telephone facsimile machine unless such person clearly marks, in a margin at the top or bottom of each transmitted page of the message or on the first page of the transmission, the date and time it is sent and an identification of the business, other entity, or individual sending the message and the telephone number of the sending machine or of such business, other entity, or individual.*

*(2) TELEPHONE FACSIMILE MACHINES.—The Commission shall revise the regulations setting technical and procedural standards for telephone facsimile machines to require that any such machine which is manufactured after one year after December 20, 1991 clearly marks, in a margin at the top or bottom of each transmitted page or on the first page of each transmission, the date and time sent, an identification of the business, other entity, or individual sending the message, and the telephone number of the sending machine or of such business, other entity, or individual. This summary of the Telephone Consumer Protection Act (47 U.S.C. § 227) is provided for convenience only. Individuals should also refer to the United States Code at http://www.gpoaccess.gov .*

*(3) ARTIFICIAL OR PRERECORDED VOICE SYSTEMS.—The Commission shall prescribe technical and procedural standards for systems that are used to transmit any artificial or prerecorded voice message via telephone. Such standards shall require that— (A) all artificial or prerecorded telephone messages (i) shall, at the beginning of the message, state clearly the identity of the business, individual, or other entity initiating the call, and (ii) shall, during or after the message, state clearly the telephone number or address of such business, other entity, or individual; and (B) any such system will automatically release the called party's line within 5 seconds of the time notification is transmitted to the system that the called party has hung up, to allow the called party's line to be used to make or receive other calls. (e)*

*EFFECT ON STATE LAW.— (1) STATE LAW NOT PREEMPTED.—Except for the standards prescribed under subsection (d) and subject to paragraph (2) of this subsection, nothing in this section or in the regulations prescribed under this section shall preempt any State law that imposes more restrictive intrastate requirements or regulations on, or which prohibits— (A) the use of telephone facsimile machines or other electronic devices to send unsolicited advertisements; (B) the use of automatic telephone dialing systems; (C) the use of artificial or prerecorded voice messages; or (D) the making of telephone solicitations.*

*(2) STATE USE OF DATABASES.—If, pursuant to subsection (c)(3), the Commission requires the establishment of a single national database of telephone numbers of subscribers who object to receiving telephone solicitations, a State or local authority may not, in its regulation of telephone solicitations, require the use of any database, list, or listing system that does not include the part of such single national database that relates to such State. (f) ACTIONS BY STATES.— (1)*

14

*AUTHORITY OF STATES.—Whenever the attorney general of a State, or an official or agency designated by a State, has reason to believe that any person has engaged or is engaging in a pattern or practice of telephone calls or other transmissions to residents of that State in violation of this section or the regulations prescribed under this section, the State may bring a civil action on behalf of its residents to enjoin such calls, an action to recover for actual monetary loss or receive $500 in damages for each violation, or both such actions. If the court finds the defendant willfully or knowingly violated such This summary of the Telephone Consumer Protection Act (47 U.S.C. § 227) is provided for convenience only. Individuals should also refer to the United States Code at http://www.gpoaccess.gov . regulations, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the preceding sentence.*

*(2) EXCLUSIVE JURISDICTION OF FEDERAL COURTS.—The district courts of the United States, the United States courts of any territory, and the District Court of the United States for the District of Columbia shall have exclusive jurisdiction over all civil actions brought under this subsection. Upon proper application, such courts shall also have jurisdiction to issue writs of mandamus, or orders affording like relief, commanding the defendant to comply with the provisions of this section or regulations prescribed under this section, including the requirement that the defendant take such action as is necessary to remove the danger of such violation. Upon a proper showing, a permanent or temporary injunction or restraining order shall be granted without bond.*

*(3) RIGHTS OF COMMISSION.—The State shall serve prior written notice of any such civil action upon the Commission and provide the Commission with a copy of its complaint, except in any case where such prior notice is not feasible, in which case the State shall serve such notice immediately upon instituting such action. The Commission shall have the right (A) to intervene in the action, (B) upon so intervening, to be heard on all matters arising therein, and (C) to file petitions for appeal.*

*(4) VENUE; SERVICE OF PROCESS.—Any civil action brought under this subsection in a district court of the United States may be brought in the district wherein the defendant is found or is an inhabitant or transacts business or wherein the violation occurred or is occurring, and process in such cases may be served in any district in which the defendant is an inhabitant or where the defendant may be found.*

*(5) INVESTIGATORY POWERS.—For purposes of bringing any civil action under this subsection, nothing in this section shall prevent the attorney general of a State, or an official or agency designated by a State, from exercising the powers conferred on the attorney general or such official by the laws of such State to conduct investigations or to administer oaths or affirmations or to compel the attendance of witnesses or the production of documentary and other evidence.*

15

*(6) EFFECT ON STATE COURT PROCEEDINGS.—Nothing contained in this subsection shall be construed to prohibit an authorized State official from proceeding in State court on the basis of an alleged violation of any general civil or criminal statute of such State.*

*(7) LIMITATION.—Whenever the Commission has instituted a civil action for violation of regulations prescribed under this section, no State may, during the pendency of such action instituted by the Commission, subsequently institute a civil action against any defendant named in the Commission's complaint for any violation as alleged in the Commission's complaint.*

*(8) DEFINITION.—As used in this subsection, the term "attorney general" means the chief legal officer of a State. This summary of the Telephone Consumer Protection Act (47 U.S.C. § 227) is provided for convenience only. Individuals should also refer to the United States Code at http://www.gpoaccess.gov . (g) JUNK FAX ENFORCEMENT REPORT.—The Commission shall submit an annual report to Congress regarding the enforcement during the past year of the provisions of this section relating to the sending of unsolicited advertisements to telephone facsimile machines, which report shall include— (1) the number of complaints received by the Commission during such year alleging that a consumer received an unsolicited advertisement via telephone facsimile machine in violation of the Commission's rules; (2) the number of citations issued by the Commission pursuant to section 503 during the year to enforce any law, regulation, or policy relating to sending of unsolicited advertisements to telephone facsimile machines; (3) the number of notices of apparent liability issued by the Commission pursuant to section 503 during the year to enforce any law, regulation, or policy relating to sending of unsolicited advertisements to telephone facsimile machines; (4) for each notice referred to in paragraph (3)— (A) the amount of the proposed forfeiture penalty involved; (B) the person to whom the notice was issued; (C) the length of time between the date on which the complaint was filed and the date on which the notice was issues; and (D) the status of the proceeding; (5) the number of final orders imposing forfeiture penalties issues pursuant to section 503 during the year to enforce any law, regulation, or policy relating to sending of unsolicited advertisements to telephone facsimile machines; (6) for each forfeiture order referred to in paragraph (5)— (A) the amount of the penalty imposed by the order; (B) the person to whom the order was issued; (C) whether the forfeiture penalty has been paid; and (D) the amount paid; (7) for each case in which a person has failed to pay a forfeiture penalty imposed by such a final order, whether the Commission referred such matter for recovery of the penalty; and This summary of the Telephone Consumer Protection Act (47 U.S.C. § 227) is provided for convenience only. Individuals should also refer to the United States Code at http://www.gpoaccess.gov . (8) for each case in which the Commission referred such an order for recovery— (A) the number of days from the date the Commission issued such order to the date of such referral; (B) whether an action has been commenced to recover the penalty, and if so, the number of days from the date the Commission referred such order for recovery to the date of such*

16

*commencement; and (C) whether the recovery action resulted in collection of any amount, and if so, the amount collected."*

# Count 1 Allegations
## #59 Through #62

Research Strategies, Inc. requests the dismissal of the allegation Civil Action No. 25-00327-TFM-N because:

On Wednesday, October 8, 2025, at 9:55AM I received a Civil Action Summons, (Civil Action No. 25-00327-TFM-N) addressing Research Strategies, Inc. served at 5858 Old Pascagoula Road, Mobile, Alabama, 36619. This class action complaint is by Allen Hartoonian (Plaintiff) v. Research Strategies, Inc. (Defendant). Research Strategies, Inc.'s recorded Articles of Dissolution (Alabama Entry ID Number 000-177-491) with the Alabama Secretary of State on September 4, 2025. Research Strategies, Inc. has disseminated all assets to paid outstanding creditors.

In the case of Mr. Hartoonian, his telephone record (818) XXX-5201(as indicated in the complaint) **was not** in Research Strategies, Inc.'s telephone records provided to CallFire to call for the Focus Group research project. Those call days were 3/29/23, 4/3/2023 and 4/4/2023. Callfire is an outbound call service used by Research Strategies, Inc. The telephone records were purchased by Research Strategies, Inc. from Database USA, compiled from the leading credit reporting companies (i.e., Experian, Equifax, etc.). The only way a telephone number could be included in these records are if the person had provided their approval **(consent)** to the credit reporting company to release, sell and/or use that information internally or by other companies. Through this chain of business transactions, Research Strategies, Inc. had the consent to use telephone numbers related to the research. If CallFire connected to a live person, the line was immediately transferred to an actual, live (non-recorded) Research Strategies, Inc.'s Telephone Researchers. If an answering machine was encountered, a message about the Focus Group research was left. This research protocol was not an unmanned (automated) robocall.

# Motion to Dismiss

Research Strategies, Inc. (now a dissolved corporation) research calls made on 3/29/23, 4/3/2023 and 4/4/2023 were made through CallFire, an outbound call service. At all times, a live Telephone Researcher was available to accept every in-person answered telephone calls. Telephone records (telephone numbers) were purchased by Research Strategies, Inc. through Database USA, compiled from the leading credit reporting companies (i.e., Experian, Equifax, etc.) data. These telephone numbers could only be released once the person had provided their approval **(consent)** to the credit reporting company. This line of consent included the previous Research Strategies, Inc.

In the case of Mr. Hartoonian, his telephone record (818) XXX-5201 (as indicated in the complaint) **was not** in Research Strategies, Inc.'s telephone records provided to CallFire to call for the Focus Group research on 3/29/23, 4/3/2023 and 4/4/2023.

On September 8, 2025, Research Strategies, Inc. filed and recorded with
the Alabama Secretary of State, Articles of Dissolution that can be found under
Alabama Entry ID Number 000-177-491. Research Strategies, Inc., a previous
Alabama Sub-S Corporation, was fully a dissolved corporation before the "Proof of
Service" for Civil Action No. 25-00327-TFM-N served at 9:57AM on Wednesday,
October 8, 2025, at 5858 Old Pascagoula Road, Mobile, Alabama 36619. With vendors
paid and assets sold/disseminated.

## Prayer for Relief

Research Strategies, Inc. asks the United States District Court for the Southern District
of Alabama to fairly consider all the facts presented in this Answer and Motion for
Summary Judgment and deny Mr. Allen Hartoonian, his law firms of Methvin, Terrell,
Yancy, Stephens & Miller, P.C. and Paronich Law, P.C. to move forward with this
complaint.

## Answer to Jury Trial and Monetary Rewards

The alleged complaint does not offer a clear path of wrongdoing to the now
dissolved Alabama Sub-S Corporation of Research Strategies, Inc. There is no
foundation for a jury trial and/or any monetary rewards. The above Answer and
Motion to Dismiss is a factual and accurate accounting of the previous Research
Strategies, Inc.'s interaction with the Focus Group research procedure conducted in
Southern California on the dates of 3/29/23, 4/3/2023 and 4/4/2023.

As previous President of Research Strategies, Inc., I solemnly swear (affirm) that as a
previous officer of the legal corporation (at the time) and a citizen of the United States
of America, I and the corporation conducted myself/itself uprightly and according to
law and that I will support the Constitution of the United States.

**THEREFORE,** Defendant respectfully request that this Honorable Court dismiss this
complaint against Research Strategies, Inc. based upon the facts with no judgment
entered against the Defendant in this matter.

RESPECTFULLY submitted this the _____ day of October 2025.

Eugene A. Talbott, Appearing Pro Se            Oct. 15, 2025
Previous President of                                         Date
Research Strategies, Inc.
A Fully Dissolved Corporation[3]

---

[3] Dissolved September 8, 2025, by the Alabama Secretary of State (Alabama Entry ID Number 000-177-491)

18

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this Answer and Motion to Dismiss upon J, Matthew Stephens and Anthony Paronich at the law firm addresses listed on the complaint by U. S. Mail, postage prepaid and by email at their listed email addresses on this the___ day of October 2025.

Eugene A. Talbott, Appearing Pro Se
Previous President of Research Strategies, Inc.

19

ENCLOSED IS A COPY OF THE
EVIDENCE YOU SUBMITTED TO THE
ALABAMA SECRETARY OF STATES'S
OFFICE FOR RECORDING.

...poration (formerly known as For-Profit Corporation) under
*Alabama 1975*, these Articles of Dissolution and the appropriate
Secretary of State.

...py... of this completed form along with a self-addressed, stamped envelope to:
*Secretary of State, Business Services, P.O. Box 5616, Montgomery, Alabama 36103.
*Include a check, money order, or credit card payment for the $100.00 processing fee.
*The request is only accepted via mail or courier and will not be accepted via email.
*You may file the dissolution online in the time it takes to type this request.
*Your filing will not be indexed if the credit/debit card does not authorize and will be removed from the index if the
check is dishonored ($30 fee).

### This form must be typed and will not be accepted via email.

1. The current recorded name of the Corporation:

   Research Strategies, Inc.

2. Alabama Entity ID Number (Format: 000-000-000): '000 - 177 - 491 **TO OBTAIN ID NUMBER,** go to
   our website at www.sos.alabama.gov, click on Business Services (below picture), click on Business Entity and
   Name Search, click on Entity Name, enter the name of the entity in the appropriate box, and enter. Click on the
   number and verify that this is the correct entity. **This step is strongly recommended.**

3. The date the dissolution was authorized: 09 / 04 / 2025 _____ (MM/DD/YYYY)
   ### Item 4, 5, or 6 MUST be checked/completed with any appropriate attachments.

4. ☐ The dissolution was approved by the stockholders. The number of votes entitled to be cast on the proposal to
   dissolve was 100 _____ (this information is required for item a or b).
   ### Complete one of the following:
   **a.** The total number of votes cast for dissolution was 100 _____ and the total number of votes cast against
   dissolution was 0
   **b.** The total number of undisputed votes cast for dissolution was 0 _____ which was a sufficient number of
   votes to approve dissolution.

5. ☐ Dissolution by voting groups was required, the information required in item 4 above is provided for each voting
   group and is attached to and made part of this Articles of Dissolution document.

6. ☑ The dissolution was approved by written consent of all stockholders under Section 10A-2A-14.02(f) and a copy of
   the written consent or consents signed by all the stockholders of the corporation is attached to and made part of this
   Articles of Dissolution document.

This form was prepared by: (type name and full address)

| |
|---|
| Eugene A. Talbott<br>President & Chariman<br>Research Strategies, Inc.<br>P., O. Box 190666<br>5858 Old Pascagoula Road<br>Mobile, AL  36619 |

(For SOS Office Use Only)

```
        Alabama
     Sec. Of State

   Entity Change
   000-177-491   D/C
   Date   9/08/2025
   Time        14:18
   250908      5 .Pg

   File     $100.00
   County      $.00
   -----------------
   Total    $100.00
   07/011
```

DB Corp Dissolution - 1/2022                    page 1 of 2

STATE OF ALABAMA

## DOMESTIC BUSINESS CORPORATION
## ARTICLES OF DISSOLUTION

PURPOSE: In order to dissolve a Business Corporation (formerly known as For-Profit Corporation) under Sections 10A-1-9.11 and 10A-2A-14.03 of the *Code of Alabama 1975*, these Articles of Dissolution and the appropriate filing fee must be filed with the Office of the Alabama Secretary of State.

INSTRUCTIONS: **Mail 2 copies of this completed form along with a self-addressed, stamped envelope to:**
**\*Secretary of State, Business Services, P.O. Box 5616, Montgomery, Alabama 36103.**
\*Include a check, money order, or credit card payment for the $100.00 processing fee.
\*The request is only accepted via mail or courier and will not be accepted via email.
\*You may file the dissolution online in the time it takes to type this request.
\*Your filing will not be indexed if the credit/debit card does not authorize and will be removed from the index if the check is dishonored ($30 fee).

### This form must be typed and will not be accepted via email.

1. The current recorded name of the Corporation:

   Research Strategies, Inc.

2. Alabama Entity ID Number (Format: 000-000-000): 000 - 177 - 491  **TO OBTAIN ID NUMBER**, go to our website at www.sos.alabama.gov, click on Business Services (below picture), click on Business Entity and Name Search, click on Entity Name, enter the name of the entity in the appropriate box, and enter. Click on the number and verify that this is the correct entity. **This step is strongly recommended**.

3. The date the dissolution was authorized: 09 / 04 / 2025   (MM/DD/YYYY)
   **Item 4, 5, or 6 MUST be checked/completed with any appropriate attachments.**

4. ☐ The dissolution was approved by the stockholders. The number of votes entitled to be cast on the proposal to dissolve was 100 _____ (this information is required for item a or b).
   **Complete one of the following:**
   **a.** The total number of votes cast for dissolution was 100 _____ and the total number of votes cast against dissolution was 0 _____
   **b.** The total number of undisputed votes cast for dissolution was 0 _____ which was a sufficient number of votes to approve dissolution.

5. ☐ Dissolution by voting groups was required, the information required in item 4 above is provided for each voting group and is attached to and made part of this Articles of Dissolution document.

6. ☑ The dissolution was approved by written consent of all stockholders under Section 10A-2A-14.02(f) and a copy of the written consent or consents signed by all the stockholders of the corporation is attached to and made part of this Articles of Dissolution document.

This form was prepared by: (type name and full address)

Eugene A. Talbott
President & Chariman
Research Strategies, Inc.
P., O. Box 190666
5858 Old Pascagoula Road
Mobile, AL  36619

DB Corp Dissolution - 1/2022        page 1 of 2

**(For SOS Office Use Only)**

```
        Alabama
    Sec. Of State

  Entity Change
  000-177-491  D/C
  Date   9/08/2025
  Time       14:18
  250908       5 Pg

  File      $100.00
  County      $.00
  ---------
  Total     $100.00
  07/011
```

**DOMESTIC BUSINESS CORPORATION ARTICLES OF DISSOLUTION**

7.  The Articles of Dissolution are effective on the date the document is filed in the Office of the Alabama Secretary of State. The corporation may file a Revocation of Dissolution with the Office of the Alabama Secretary of State within 120 days of the effective date. After the 120 days for revocation lapse, a corporation cannot revoke or reinstate it must be filed as a new Certificate of Formation.

<u>  09  /  04  /  2025  </u>
Date    (MM/DD/YYYY)

Signature as required by 10A-2A-1.20

Eugene A. Talbott
Typed name of above signature

President & Chairman
Typed title/capacity to sign under 10A-2A-1.20

**Secretary of State Credit Card or Prepaid Payment Option/Return/Hold Sheet:** If you do not send an acknowledgement copy and a pre-addressed postage paid envelope with the filing you will not receive a receipt from the Secretary of State's Office. Hold for pickup request will have the receipt attached. The document of record will be stamped showing the receipt of the filing fee but will not show convenience fees (these fees are 3% of the total charge plus $2.00).

## Information MUST be typed or filing will be returned without review.

Entity Name:_____

AL Entity ID #, required for all filings other than formation/registration: ___000___-_____-_____
(ex: 000-000-000)

Service Requested:___✔___ $100.00 Dissolution/Cancellation filing fee

Hold at Front Desk for pick-up by: _Sandra M. McLure_____

**There is no notification service/call for pick-up.**

**Choose one of the following:**

___Ⓞ___Check/money order is attached-Please make one check payable for each filing to the Alabama
      Secretary of State. Do not use one check for multiple filings.


___Ⓞ___Charge fees to prepaid account: Account Number_____

      and Account Name_____


      _____
      Typed Name & Signature of Authorized Individual on Account


___Ⓞ___Credit Card Type:_____(Visa, MC, Discover & AmEx)

      Card Number:_____Expiration Mo/Yr.:_____/_____ (MM/YY)

      Card Holder Name:_____

      Complete Billing Address:_____
                                 Street or PO Box

      _____
      City                            State                Zip

Signature of Card Holder:_____
                               MUST be Signature of Card Holder


Domestic Dissolution/Termination Credit Card/Prepaid Account Payment Slip – 10/2022

# *Research Strategies, Inc.*

**Consumer, Public Opinion & Business-to-Business Market Research**

New Orleans  866/660-2910
Mobile   251/660-2910
Charlotte 866/660-2910
P. O. Box 190666
Mobile, AL 36619
RSInc@ResearchStrategiesInc.Com
**www.ResearchStrategiesInc.com**

### Minutes of the Meeting of the
### Shareholders and Directors of
### Research Strategies, Inc.
### By Resolution of Dissolution

### September 4, 2025

The special meeting of the shareholders and directors of Research Strategies, Inc. was held at 12:00 PM on September 4, 2025, at the headquarters of 5858 Old Pascagoula Road, Mobile, AL 36619. Eugene A. Talbott - Chairman and Patricia Rhinehart - Secretary & Treasurer attended the meeting. Both Mr. Talbott (owning 75 shares) and Ms. Rhinehart (owning 25 shares) are the only Board of Directors and Shareholders of the corporation.

### First Action

The first item of business was the Meeting of the Board to dissolve Research Strategies, Inc, a domestic (Sub-S) corporation in the State of Alabama. The rationale for the dissolution taken up was the possibility of lack of business that would not sustain the financial stability of the company.

### Second Action

Mr. Talbott and Ms. Rhinehart  by resolution voted unanimously to dissolve the corporation effectively immediately.

### Third Action

Mr. Talbott and Ms. Rhinehart as the only Shareholders of the Corporation voted unanimously to accept the dissolution plan and dissolve Research Strategies, Inc. effective immediately.

After a discussion of the above matter, the following resolutions were unanimously adopted by motion duly made, seconded and carried.

Since there was no further business, the meeting was adjourned.

Eugene A. Talbott
Chairman
Research Strategies, Inc.
September 4, 2025

Patricia Rhinehart
Secretary & Treasurer
Research Strategies, Inc.
September 4, 2025

```
          Alabama
      Sec. Of State

   Entity Change
   000-177-491  D/C
   Date   9/08/2025
   Time        14:18
   250908       5 Pg

   File     $100.00
   County      $.00
          _____
   Total    $100.00
   07/011
```

WAIVER OF NOTICE OF REGULAR MEETING OF DIRECTORS
OF

The undersigned, being all of the directors of
_Research Strategies_ , consent that the regular meeting of
the directors be held at _5858 Old Pascagoula Rd Mobile AL_
_____, on _September 4,_
_2025_ , _12:00_ m.. We waive further notice of the meeting.

_Patricia Rhinehart_

DIRECTOR'S MEETING 4